## UNITED STATES v. MARTIN HOTEL CO. et al.

District Court, D. Nebraska, Omaha Division. May 27, 1931.

162

Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. attorney, both of Omaha, Neb.

Kennedy, Holland & DeLacy, of Omaha, Neb., for defendants.

WOODROUGH, District Judge.

The United States sues to recover upon an escrow contract given to secure the payment of certain excess income taxes assessed against defendant taxpayers for the years 1918 and 1919, under the Revenue Act of 1918 (40 Stat. 1057). The Commissioner made additional assessments against the taxpayers in March, 1924, and the collector threatened distraint (notwithstanding the taxpayers had filed their petition for abatement) and so compelled the giving of the security sued on. Though the document is single, there are two controversies, one about the 1918 taxes and the other about the taxes for 1919.

 As to the taxes for 1919. It appears that the taxpayers made their return for that year on May 15, 1920, and the Commissioner never finally and definitely adjusted and settled their additional taxes until March 23, 1926, more than five years after the returns had been filed. The statute (Revenue Act 1918, § 250 (d), 40 Stat. 1083), is clear that, as to taxes under the Revenue Act in question, "no suit for (their) collection shall be begun after the expiration of five years after the date when the return * * * was made." Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255. So beyond question the taxes as such were barred when the final assessments were made and when this suit was begun on September 26, 1930. But this suit is not upon the taxes; it is upon the escrow contract. In substance, the condition of the contract was that the escrow agent would pay out of the moneys deposited with it by the taxpayer "any and all of the additional corporation income taxes finally determined to be due." And it is claimed for the government as to the suit on the contract that no time has run to bar it. This contention, I am satisfied, is fully sustained by the decision of the Supreme Court in U. S. v. Barth, 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743; and equally whether the statute had run before or after the security contract was taken, Mascot Oil Co. v. U. S. (Ct. Cl.) 42 F.(2d) 309.

 On the other hand, analysis of the escrow contract shows that it was given and taken solely for the purpose of securing the payment to the government of taxes when and to the extent that they should finally be determined to be just and payable. The contract is drawn upon the assumption that such final determination rested with the Commissioner of Internal Revenue, and the references are to his final determination.

But as a matter of fact, the Act of June 2, 1924 (section 900 [26 USCA § 1211 note et seq.]), creating the Board of Tax Appeals and vesting it, instead of the Commissioner, with the final authority, had already gone into effect. Having in mind, therefore, the sole purpose of the security given to secure payment of taxes to be finally established and nothing else, the real intent of the document is that the escrow agent should pay when and if the Commissioner, with the assent of the Board of Tax Appeals, finally determined that there were excess taxes justly due. Certainly there could be no power in the collector to make a taxpayer give security to pay a tax whether the Board of Tax Appeals approved the tax or not. Nor should any intention to do so be imputed to him. As the Supreme Court said in Russell v. U. S., 278 U. S. 181, page 186, 49 S. Ct. 121, 122, 73 L. Ed. 255, regarding assessments made like those involved here after the Act of June 2, 1924: They "generally at least, if objected to, could not be made without assent of the Board" of Tax Appeals. And so, whenever "final determination by the Commissioner" is referred to in the contract, it must be taken to mean "by the Commissioner with the assent of the Board" of Tax Appeals.

It appears, however, that the Board of Tax Appeals did not assent to the excess taxes involved here, but on the contrary, when the matter had been heard before it and on January 21, 1930, the board entered its final order: "Ordered and Decided that for the calendar year 1919, there is no deficiency in income or profits taxes in respect to any of the following petitioners herein (naming the defendant tax payers)."

Although the United States through its Commissioner had a right to review this final decision of the Board in the Circuit Court of Appeals, it did not do so, and it constitutes a final determination that there are no taxes that are justly due or to which the United States has any right to apply the security taken from the defendant taxpayers herein.

It is contended for the government that the board of Tax Appeals did not examine into or pass upon the merits of the determination of the assessment made by the

Commissioner, and that is true. The Board found on the motion of the taxpayers that at the time the Commissioner assumed to make the assessment his right to do so was barred by the statute of limitations, in that more than five years had then elapsed since the taxpayers' returns were filed, and upon that finding alone rendered its opinion. Finding as I do, under the Barth Case, that the giving of the security by the taxpayers operated to postpone the time within which there could have been a determination of the assessments that would have bound the taxpayers upon their contract of security, the action of the Board appears contrary to my understanding. The Board, as I see it, ought to have reviewed the assessments and so saved the rights of the government if any. But the Court of Appeals alone had jurisdiction to review the action of the Board. The Board and the Board alone had the power to decide whether or not upon a fair assessment there were any taxes due, and it decided, for reasons sufficient to itself, that there were no excess taxes, and so declared. I conclude, therefore, that the government is not entitled to recover anything herein on account of the promise in the contract to pay 1919 taxes.

As to the excess taxes assessed for 1918: The five-year period had also elapsed before the Commissioner made his final assessments for this year. But he made the assessments as it was contemplated in the security contract that he should make them, and there was no appeal. The express provisions of that contract are that the money would be paid according to the determination of the Commissioner when made by him, and it is no defense that the time consumed was greater than would have been allowed to assess and levy or collect the taxes themselves by legal proceedings. The burden to fulfill their contract is upon the defendants regardless of whether they could have defeated the taxes or not. The plaintiff should be awarded recovery of the 1918 excess taxes as finally determined on March 23, 1926, with interest as prayed.

I have indicated by notations upon the findings requested by plaintiff those findings which should be made in the judgment entry, and in addition there should be inserted the findings indicated by this memorandum.